**UNITED STATES of America,**
**Appellee,**

v.

**Jose Cecilio HIDALGO–MACIAS,**
**Defendant–Appellant.**

**No. 01–1590.**

United States Court of Appeals,
Second Circuit.

Argued June 19, 2002.

Decided Aug. 5, 2002.

Kimberly A. Schechter, Federal Public Defender's Office, Western District of New York, Buffalo, New York (Jay S. Ovsiovitch, of counsel), for Defendant–Appellant.

Michael A. Battle, United States Attorney, Buffalo, New York (Marc Gromis, Assistant United States Attorney, of counsel), for Appellee.

Before: McLAUGHLIN and F.I. PARKER, Circuit Judges, SESSIONS, District Judge.*

PER CURIAM.

Jose Hidalgo–Macias appeals from his sentence imposed November 2, 2001 in the United States District Court for the Western District of New York (John T. Elfvin, *Judge*) after his plea of guilty to illegal reentry, in violation of 8 U.S.C. §§ 1325(a) and 1326(a). Hidalgo–Macias was sentenced to 30 months of imprisonment plus three years of supervised release.

At issue is whether his prior conviction for attempted burglary was an "aggravated felony" for purposes of sentencing Hidalgo–Macias pursuant to United States Sentencing Guideline ("U.S.S.G." or "Sentencing Guideline") § 2L1.2 and 8 U.S.C. § 1101(a)(43). The district court concluded that Hidalgo–Macias's prior conviction was an aggravated felony, based on combined jail terms of six months at his origi-

nal sentencing and one year following revocation of his probation. We affirm.

## BACKGROUND

Hidalgo–Macias is a native and citizen of Mexico. In March 1979 he was granted residency status in the United States. On January 27, 1992 he pled guilty in Genesee County Court in the state of New York to attempted burglary in the third degree. He received a sentence of six months of incarceration plus five years of probation. In October 1993 he was charged with violation of probation for failing to report to his probation officer and failing to participate in alcohol treatment. In April 1994, having been found in violation of his probation, Hidalgo–Macias was re-sentenced to a one year jail term.

On July 8, 1999, Hidalgo–Macias was deported to Mexico. Some months later he re-entered the United States near Brownsville, Texas. He was discovered on January 30, 2001 by a border patrol agent in the Western District of New York. Hidalgo–Macias was arrested and charged with being found in the country after deportation. He waived indictment and pled guilty to an information, pursuant to a plea agreement.

Under the applicable statute and sentencing guidelines, Hidalgo–Macias's prison exposure depended on whether his prior criminal conviction was for an "aggravated felony" or "any other felony." [1] The government and the United States Probation Office ("USPO") took the position that Hidalgo–Macias's prior convic-

---

\* The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

1. At the time the plea agreement was executed, a defendant convicted of an aggravated felony received a specific offense characteristic increase under the Sentencing Guidelines of sixteen levels from the base offense level.

*See* U.S.S.G. § 2L1.2 (Nov.2000). Any other felony increased the defendant's base offense level by four levels. *See id.* At the time Hidalgo–Macias was sentenced, the Sentencing Guidelines had been amended to reduce the enhancement for an aggravated felony to an eight level increase. *See id.* (Nov.2001).

tion was an aggravated felony, because he had served a total of more than one year of incarceration for the offense. Hidalgo–Macias argued that the sentence imposed upon revocation of his probation should not be included in determining the length of his prior jail sentence. The district court adopted the recommendation of the USPO, increased the base offense level of eight by eight levels, and imposed a sentence of 30 months of imprisonment.

## DISCUSSION

### Standard of Review

■ In examining an application of the Sentencing Guidelines, this Court reviews a district court's legal interpretation de novo. *See United States v. Pacheco*, 225 F.3d 148, 153 (2d Cir.2000), *cert. denied*, 533 U.S. 904, 121 S.Ct. 2246, 150 L.Ed.2d 234 (2001).

### "Aggravated Felony"

Sentencing guidelines for offenses involving violations of the immigration laws are covered in Part L of the U.S. Sentencing Guidelines Manual (Nov.2001). Section 2L1.2(a) provides for a base offense level of 8 for a violation of 8 U.S.C. §§ 1325(a) and 1326. If a defendant was previously deported following a felony conviction, subsection (b)(1) requires a sentencing court to apply the greatest of the following:

(A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit, increase by 16 levels;

(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;

(C) a conviction for an aggravated felony, increase by 8 levels;

(D) a conviction for any other felony, increase by 4 levels[.]

U.S.S.G. § 2L1.2(b)(1)(A)-(D). Thus, Hidalgo–Macias's prior felony conviction for attempted burglary in the third degree would have resulted in an eight level enhancement if it was an aggravated felony; otherwise he would have received a four level enhancement for "any other felony." *See id.* § 2L1.2(b)(1)(C), (D).

The Application Notes to U.S.S.G. § 2L1.2 direct that " 'aggravated felony' has the meaning given that term in 8 U.S.C. § 1101(a)(43)." *Id.*, cmt. n. 2. Section 1101(a)(43) of Title 8 U.S.C.A. defines "aggravated felony" in relevant part as "(G) a theft offense ... or burglary offense for which the term of imprisonment at [sic] least one year; ... and (U) an attempt ... to commit an offense described in this paragraph." 8 U.S.C.A. § 1101(a)(43)(G), (U) (West 1999).[2] Thus an attempted burglary conviction is an aggravated felony if the term of imprisonment was at least one year.

■ This Circuit among others has held that the "term of imprisonment" language quoted above refers to the "actual term imposed." *Pacheco*, 225 F.3d at 154; *see also United States v. Guzman–Bera*, 216 F.3d 1019, 1020 (11th Cir.2000) (*per curiam*); *Alberto–Gonzalez v. I.N.S.*, 215 F.3d 906, 910 (9th Cir.2000); *United States v. Graham*, 169 F.3d 787, 790–91 (3d Cir. 1999). Hidalgo–Macias's initial sentence

---

**2.** The statute contains a footnote "2" following "at," that reads "[s]o in original. Proba-

bly should be preceded by 'is'." 8 U.S.C.A. § 1101(43)(G) n. 2 (West 1999).

on the attempted burglary was six months of incarceration plus five years of probation.[3] Had there been no probation violation, his attempted burglary conviction would not have been considered an aggravated felony. *See United States v. Martinez–Villalva,* 232 F.3d 1329, 1333 (10th Cir.2000) (direct imposition of probationary sentence does not render offense an "aggravated felony"); *Guzman–Bera,* 216 F.3d at 1021 (same); *United States v. Banda–Zamora,* 178 F.3d 728, 730 (5th Cir.1999) (same).

■ After his release from jail and prior to deportation, however, Hidalgo–Macias's probationary sentence was revoked and he was sentenced to one year in jail. He contends that this "re-sentence" does not constitute part of the actual sentence imposed for attempted burglary, invoking the "plain language of the statute." In fact, the gist of his argument is that "actual sentence imposed" should be interpreted as "initial sentence imposed." This interpretation is unsupported by the statute or by case law.

Hidalgo–Macias's argument has been expressly rejected in *United States v. Jimenez,* 258 F.3d 1120 (9th Cir.2001). Jimenez was originally sentenced to probation on his prior state court conviction for inflicting corporal injury on a spouse. *Id.* at 1123. Upon revocation of probation he received a two year term of imprisonment, of which he served thirteen months. *Id.* The Court ruled that, for purposes of determining whether the conviction was an aggravated felony, the term of imprisonment was two years. *Id.* at 1125.

■ As Hidalgo–Macias's own use of the term "re-sentence" implies, under New York law "[a] sentence of probation is . . .

a tentative disposition that may be altered or revoked in accordance with the provisions of the article under which it was imposed." *People v. Amorosi,* 96 N.Y.2d 180, 726 N.Y.S.2d 339, 750 N.E.2d 41, 43 (2001); *see* N.Y. Penal §§ 60.01(2)(b); (3); 65.00(2). The state's view of its probationary sentences is consistent with the federal view. *See United States v. Vogel,* 54 F.3d 49, 50 (2d Cir.1995) (per curiam) ("we do not believe that Congress intended a violation of probation to be considered a separate offense. Rather, Congress clearly intended for sentence to be imposed on the original conviction"); *United States v. Woods,* 127 F.3d 990, 992 (11th Cir.1997) (revocation of probation constitutes modification of terms of original sentence); *United States v. Woodrup,* 86 F.3d 359, 362 (4th Cir.1996) (sentence imposed upon revocation of probation is modification of original sentence for which probation was authorized); *United States v. Brown,* 59 F.3d 102, 104 (9th Cir.1995) (revocation of probation is reinstatement of sentence for underlying crime, not punishment for conduct leading to revocation). *See also United States v. Meeks,* 25 F.3d 1117, 1121 (2d Cir.1994) (supervised release, analogous to probation and parole, is integral part of punishment for underlying offense).

■ Based on the foregoing, we hold that the imposition of a sentence of imprisonment following revocation of probation is a modification of the original sentence, and must be considered part of the "actual sentence imposed" for the original offense. Hidalgo–Macias's term of incarceration for his prior conviction totaled eighteen months; consequently it met the definition of an aggravated felony, and the district court correctly assessed an eight level en-

---

**3.** New York law authorizes a sentence of probation that includes a term of imprisonment as a condition of the probation, among other dispositions. *See* N.Y. Penal Law § 60.01 (1997). It does not authorize the imposition of a suspended sentence.

hancement from the base offense level for a conviction of illegal reentry.

*"Offense Conduct" distinguished from "Criminal History"*

■ At Hidalgo–Macias's sentencing, the district court stated that it relied on the recommendation of the USPO, without specifying any reasoning. The USPO's Presentence Report and Addendum offered the Sentencing Guidelines Manual Chapter Four rules for determining criminal history category as one basis for the aggravated felony recommendation. Although we affirm the district court's conclusion that a sentence imposed after revocation of probation is part of the actual sentence imposed for aggravated felony purposes, we emphasize that Chapter Four's Criminal History rules do not provide a rationale for that determination. The base offense level, and any appropriate specific offense characteristics, are calculated from the instructions in Chapter Two, Offense Conduct.

Offense level determination is intended to serve a different purpose than criminal history calculation; the two are analyzed independently. *See United States v. Parker,* 136 F.3d 653, 655 (9th Cir.1998); *United States v. Alessandroni,* 982 F.2d 419, 421 (10th Cir.1992); *United States v. Burnett,* 952 F.2d 187, 189 (8th Cir.1991). The offense level rules address the severity of the instant offense, whereas the criminal history rules are intended to address issues of recidivism and deterrence. *United States v. Martinez,* 931 F.2d 851, 852 n. 1 (11th Cir.1991). U.S.S.G. § 2L1.2 specifies that the term "aggravated felony" is defined by statute. There is no authorization or justification for consulting the criminal history rules in Chapter Four for an explanation of the term.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.