In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1470

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CRUZ LOPEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:09-cr-50033-1—**Frederick J. Kapala**, *Judge.*

ARGUED NOVEMBER 5, 2010—DECIDED MARCH 4, 2011

Before EVANS, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal presents an issue of law concerning the application of section 2L1.2 of the Sentencing Guidelines to an alien's illegal reentry into the United States after an earlier felony conviction and deportation. Guideline section 2L1.2 calls for a base offense level of eight, which is increased by sixteen levels for, among other things, a prior conviction of a drug trafficking offense for which the sentence im-

posed exceeded thirteen months. The increase is only twelve levels for a drug trafficking offense for which the sentence imposed was thirteen months or less.

The issue here is whether the sentencing court should measure the seriousness of an alien's prior drug trafficking conviction by the sentence imposed before the defendant's deportation and illegal reentry, or whether the court should take into account a later increase in the sentence as a result of a probation revocation. Based on the language of the guideline, we conclude that the seriousness of the earlier conviction should be measured, for guideline purposes, based on the sentence imposed before the defendant's earlier deportation and illegal reentry. We therefore vacate the appellant's sentence and remand for resentencing.

The relevant facts are simple. In 2004, appellant Cruz Lopez was convicted of drug trafficking in an Illinois state court. He was sentenced to 180 days in the county jail and 48 months of probation. In 2006, he was deported from the United States. He later illegally reentered the country and was discovered and detained by the Department of Homeland Security on February 18, 2009. Then, on April 7, 2009, while Lopez was in federal custody, the state court revoked Lopez's sentence of probation for the 2004 drug trafficking conviction and imposed a sentence of three years in prison. Lopez's probation was revoked for his failure to report to his state probation officer after his 2006 deportation. On July 21, 2009, Lopez was indicted by the federal authorities for his crime of illegal reentry after an earlier deportation that

followed a conviction for an aggravated felony. 8 U.S.C. §§ 1326(a), (b)(2). He pled guilty and was sentenced, pursuant to the sixteen-level enhancement of section 2L1.2(b)(1)(A)(i). His sentence of 74 months in prison was within the guideline range of 70 to 87 months based on the sixteen-level enhancement. Lopez argues that only the twelve-level enhancement should apply, based on the sentence he received originally, before he was deported and reentered the United States. With the twelve-level enhancement, the guideline range is only 46 to 57 months.

The legal issue requires close attention to the text of section 2L1.2(b)(1), which instructs the sentencing court in an illegal reentry case to:

> (1) Apply the Greatest:
>
> If the defendant previously was deported, or unlawfully remained in the United States, after—
>
>> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . . increase by 16 levels;
>>
>> (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels.

The question here is whether we should count only the original, shorter sentence imposed before Lopez's deportation or should count the more severe sentence imposed on revocation of Lopez's probation for drug trafficking—a sentence that was imposed after he was

deported and illegally reentered, but before he was indicted, convicted, and sentenced for the crime of illegal reentry. We review the district court's interpretation and application of the Sentencing Guidelines de novo. See *United States v. Anderson*, 580 F.3d 639, 648 (7th Cir. 2009). We hold that Lopez's later sentence on probation revocation after his deportation and reentry should not count under section 2L1.2(b)(1)(A)(i).

The government argues that the timing of the imposition of Lopez's various sentences is immaterial to the application of section 2L1.2(b)(1)(A)(i) because Lopez's drug trafficking *conviction* preceded his deportation. This argument is not consistent with the text of the guideline. The guideline requires that a defendant's sentence of over thirteen months be imposed before the defendant's deportation. "If the defendant previously was deported . . . after—a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months. . . ." U.S.S.G. § 2L1.2(b)(1)(A)(i). The past tense "imposed" indicates that the focus is on the sentence that was imposed before the deportation and reentry. Here, when Lopez was deported, the sentence that had been imposed for his drug trafficking conviction was below the thirteen-month threshold of the guideline. Although Lopez's later sentence for violating his probation related back to his underlying conviction for a drug offense, the sentence imposed did not cross the thirteen-month threshold until after he had already been deported—not before. The later imposition of a sentence exceeding thirteen months after the deportation and reentry does not

satisfy the temporal restriction of section 2L1.2(b)(1)(A)(i). The guideline's sixteen-level enhancement therefore does not apply to Lopez.

Our holding is consistent with the Eleventh Circuit's decision in *United States v. Guzman-Bera*, 216 F.3d 1019 (11th Cir. 2000). At issue was a prior version of section 2L1.2(b)(1)(A) that applied the sixteen-level enhancement for the commission of an aggravated felony prior to deportation (not specifically for an over thirteen-month sentence imposed for a drug trafficking conviction). See U.S.S.G. § 2L1.2(b)(1)(A) (1997). Under that version of the guideline, an "aggravated felony" included "a theft offense . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G), referenced by U.S.S.G. § 2L1.2 cmt n.1 (1997). Guzman-Bera was deported in 1991 after being convicted for cocaine possession. He reentered the country and was arrested for grand theft in 1995. He was found guilty and sentenced to five years of probation by a Florida state court. He again was deported, again reentered, and in 1998 was arrested and convicted of violating his probation (and of several additional counts of grand theft). The Florida court revoked his probation and sentenced him to eighteen months in prison. The issue was whether Guzman-Bera's 1995 theft conviction could be coupled with the eighteen-month sentence that was imposed when his probation was revoked to make it an "aggravated felony" and thus meet the threshold then applicable under section 2L1.2(b)(1)(A). The Eleventh Circuit held that it could not: "when a defendant has simply been placed on probation and has not been sen-

tenced to a prison term at the time of deportation and reentry, the 'aggravated felony' enhancement does not apply." *Guzman-Bera*, 216 F.3d at 1020. The court found that the sentence actually imposed on Guzman-Bera for his 1995 theft conviction was his probation, not the later eighteen-month sentence he received when his probation was revoked. The defendant's theft conviction was not an aggravated felony when he was deported, and should not have been used to enhance his sentence under the earlier version of section 2L1.2(b)(1)(A). The government attempts to distinguish *Guzman-Bera* because it concerned the classification of certain offenses as aggravated felonies (or not) for purposes of the former section 2L1.2(b)(1)(A). We believe this is a distinction without a difference, and we follow the Eleventh Circuit's approach.

Our interpretation of the guideline is consistent with both the purpose behind the enhancement and the larger goal of consistent application of the Sentencing Guidelines. Defendants who reenter the country illegally after having committed more serious drug trafficking crimes should be punished more severely than defendants who reenter the country illegally after having committed less serious drug trafficking crimes. The Guidelines use the length of the sentence as a rough measure of the seriousness of the underlying drug trafficking crime and the seriousness of the new crime of illegal reentry. Probation revocation sentences imposed after a defendant has been deported tell us little about the seriousness of either the prior drug trafficking crime or the new crime of illegal entry. Probation can be

revoked for non-criminal and relatively less significant actions or inactions. Here, for example, the state court originally sentenced Lopez to 180 days in jail and 48 months of probation for his drug trafficking offense, indicating that it believed his offense to be of the less serious variety. The fact that his probation was later revoked for his inevitable failure to report to his probation officer after he was deported tells us nothing about the relative seriousness of the original drug trafficking offense or the illegal reentry.

We also share the concerns of the Fifth Circuit, expressed last year in *United States v. Bustillos-Pena*, 612 F.3d 863 (5th Cir. 2010). In a case with facts nearly identical to this one, the government raised nearly identical arguments in favor of the sixteen-level enhancement. The Fifth Circuit expressed its wariness of the government's position, noting that under the government's reading of the guideline, the enhancement could be triggered by unrelated conduct occurring long after the commission of the crime of reentry if that conduct—conduct that was not necessarily illegal—violated the terms of the defendant's probation. *Bustillos-Pena*, 612 F.3d at 867. The court also expressed its concern that, under the government's view, two defendants who committed identical acts could receive widely disparate guideline ranges depending on the accident of which authorities moved more quickly:

> Thus, a defendant who was sentenced to probation and deported, and who later reentered illegally, could have his probation revoked by state

authorities if they discovered that he had reentered illegally. If he were sentenced to more than thirteen months' imprisonment and were later found in state custody by ICE officials, he could then be charged with illegal reentry and have his offense level enhanced by sixteen levels under the Government's interpretation. Meanwhile, a second defendant with an identical criminal history who also illegally reentered, but was fortunate enough to be apprehended by ICE before the state authorities, would have a much lower sentence for his guideline range, even if the state later revoked his probation based on his federal conviction.

*Id.* at 868. We share these concerns.

In spite of these concerns, the Fifth Circuit concluded that the guideline was ambiguous with respect to its application to a defendant who was "deported before being sentenced to more than thirteen months of imprisonment on a conviction that predated his deportation and where the defendant was convicted of illegal reentry while incarcerated." *Id*. at 869. Having found the guideline to be ambiguous, the majority applied the rule of lenity and resolved the issue in the defendant's favor. See *id*. We find no such ambiguity in the guideline, but we reach the same result.

The government argues that the commentary to section 2L1.2 supports its interpretation of the guideline. There, the Sentencing Commission gave the term "sentence imposed" the same meaning that the phrase "sentence of imprisonment" is given "in Application Note 2 and

subsection (b) of § 4A1.2 (Definitions and Instructions for Computing Criminal History), without regard to the date of the conviction. *The length of the sentence of imprisonment includes any term of imprisonment given upon revocation of probation, parole, or supervised release.*" U.S.S.G. § 2L1.2, cmt n. 1(B)(vii) (emphasis added).[1] The government reads this comment to mean that the sentence imposed on Lopez in October 2004 for his drug trafficking conviction included the 36-month "sentence of imprisonment" the state court later imposed on Lopez in April 2009 for violating his probation. That may be correct for many purposes, including calculating a defendant's criminal history. But the application note and the argument do not address the issue of timing under section 2L1.2(b)(1). Lopez was convicted in 2004, he was deported in 2006, and the increased sentence was imposed in 2009. Even if the term of imprisonment to which Lopez was sentenced in 2009 upon revocation of his probation was part of the "sentence imposed" for his 2004 drug trafficking conviction for other purposes, that fact does not change the key fact that Lopez was not

---

[1] Subsection (b) of section 4A1.2 provides:

(b) Sentence of Imprisonment Defined

(1) The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.

(2) If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

deported *after* that sentence was imposed, as section
2L1.2(b)(1)(A)(i) requires. Lopez was deported *before*
the higher, over-the-threshold sentence was imposed.
The temporal restriction of the guideline is clear. The ap-
plication note does not speak to the question before us
in this case or alter our interpretation of the guideline.[2]

   Although we believe that the plain language of the
guideline supports our holding, we note that the Second
Circuit has held otherwise, finding that the guideline's
sixteen-level enhancement applies regardless of the
timing of the defendant's deportation and revocation of
probation. In *United States v. Compres-Paulino*, 393 F.3d
116 (2d Cir. 2004), the defendant had been convicted in
2000 on charges of distributing a controlled substance.
He was sentenced to three to six years of parole and,
while on parole, was deported and reentered. He com-
mitted a second drug offense, possession this time, and
his parole was revoked and he was sentenced to
29 months in prison. When he pled guilty to
illegal reentry in 2003, the sentencing court applied the
sixteen-level enhancement in section 2L1.2(b)(1)(A)(i). On
appeal, the Second Circuit found "the determinative
factor" to be that the defendant had been convicted of a
drug felony before he was deported. *Id*. at 118. Because

---

[2] As we interpret section 2L1.2(b)(1)(A), the application note
would provide guidance where, for example, the increased
sentence was imposed before the defendant's deportation
and later illegal reentry. The decisive issue under the terms
of section 2L1.2(b)(1)(A) is what sentence was imposed
before the defendant was deported and reentered.

"any punishment assessed for a violation of probation is actually imposed for the underlying conviction," the court held that the defendant's 2000 conviction for drug trafficking included the 29-month prison sentence he received when his parole was revoked. See *Compres-Paulino*, 393 F.3d at 118, quoting *United States v. Huerta-Moran*, 352 F.3d 766, 770 (2d Cir. 2003) (counting sentence on parole revocation toward the thirteen-month threshold in section 2L1.2(b)(1)(A) where revocation occurred *before* final deportation and reentry). Based on that reasoning, the Second Circuit extended its earlier holding in *Huerta-Moran* to apply to sentences imposed on revocation of probation after final deportation and reentry. 393 F.3d at 118. For reasons previously explained, we believe that the determinative factor is not when a defendant is convicted of the underlying drug crime, but what sentence was imposed for that crime before the defendant was deported. Accordingly, we disagree with the Second Circuit's decision in *Compres-Paulino*.[3]

In a case like this one, presenting a rather technical and arcane question in applying the Sentencing Guidelines, it is perhaps worth another reminder that the Guidelines

---

[3] In another similar case, the Tenth Circuit wrote that the defendant made a "plausible" argument against application of the sixteen-level enhancement based on a later probation revocation, but held that any error was not "plain error" that would justify reversal in the absence of an objection in the district court. *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187-88 (10th Cir. 2003).

are, after all, guidelines. They must be considered seriously and applied carefully. See *Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Booker*, 543 U.S. 220, 264 (2005). In the end, however, the defendant's sentence is the responsibility of the district judge, after careful consideration of all the relevant factors under 18 U.S.C. § 3553(a). See *Gall*, 552 U.S. at 50. The focus must still be on the nature and circumstances of the offense, the history and characteristics of the offender, and several goals of sentencing. A district court facing a tricky but technical issue under the Guidelines may exercise its discretion under section 3553(a) and may spell out on the record whether and to what extent the resolution of the guideline issue affected the court's final decision on the sentence. See, *e.g.*, *United States v. Sanner*, 565 F.3d 400, 406 (7th Cir. 2009) (affirming above-guideline sentence without regard for correct resolution of guideline issue); *United States v. Abbas*, 560 F.3d 660, 666-67 (7th Cir. 2009) (holding that guideline error was harmless based on judge's explanation of alternative basis for same sentence); *United States v. Anderson*, 517 F.3d 953, 965-66 (7th Cir. 2008). In this case, Lopez received a sentence within the guideline range as calculated erroneously by the district court. There was no separate indication as to how the specific guideline issue affected the court's decision. We therefore must assume that the erroneous interpretation of the guideline affected the final sentence. We vacate Lopez's sentence and remand for resentencing.

VACATED AND REMANDED.