HOLLOWAY, Circuit Judge.
Defendant-Appellant Raul Rosales-Garda (Rosales) pled guilty to one count of illegal reentry in violation of 8 U.S.C. § 1326 and was sentenced to a term of imprisonment of 37 months. On appeal Mr. Rosales challenges his sentence, alleging that the district court incorrectly applied the Sentencing Guidelines. We agree. We REMAND to the district court for resentencing.
I
USSG § 2L1.2 is the Sentencing Guidelines provision applicable to defendants who illegally reenter the country in violation of 8 U.S.C. § 1326. The sentencing scheme embodied in § 2L1.2 imposes, via enhancements to the defendant’s base offense level, more severe punishment for defendants who have committed serious prior crimes. A drug trafficking felony is enumerated as one such predicate offense. Depending on the length of the “sentence imposed” for the earlier drug trafficking felony, the defendant is subject to a 12- or 16-level enhancement on his illegal reentry sentence. If the “sentence imposed” for the earlier drug trafficking crime exceeded 13 months, the defendant is subject to the 16-level enhancement set out in § 2L1.2(b)(l)(A).
The sole question posed before us on appeal is whether the 16-level enhancement in USSG § 2L1.2(b)(l)(A) applies to a defendant whose sentence for an earlier drug trafficking felony was made longer than 13 months after the defendant was deported and committed the base offense of illegal reentry.
The relevant facts are undisputed and uncomplicated. Mr. Rosales was convicted of a state drug trafficking felony in 2008 and sentenced to 90 days’ state imprisonment and 3 years of probation. Mr. Rosales was deported and then illegally reentered the country, violating the terms of his state probation and 8 U.S.C. § 1326. Federal law enforcement arrested Mr. Rosales shortly after he illegally reentered the country. Mr. Rosales’s probation for the earlier state drug offense was revoked by a Utah state court as a result of his illegal reentry. Upon revocation of probation, Mr. Rosales was sentenced-in state court to a term of imprisonment of 1 to 15 years on his prior state drug felony. After serving his state drug sentence, Mr. Rosales was released into federal custody and prosecuted in federal court for his illegal reentry. Mr. Rosales agreed to plead guilty to the federal charge as part of the District of Utah’s fast-track program. Accordingly, the United States Probation Office prepared a Presentence Report (“PSR”) before Mr. Rosales entered his guilty plea.
The PSR recommended that Mr. Rosales’s base offense level be enhanced by 16 levels pursuant to USSG § 2L1.2(b)(l)(A). During his sentencing hearing and with the prosecution’s permission, Mr. Rosales objected to the 16-level enhancement. The government alleged that Mr. Rosales’s sentence upon revocation of his state probation constituted a prior drug trafficking felony for which the sentence imposed exceeded 13 months. Mr. Rosales contended that application of the 16-level enhancement did not comport with the Sentencing Guidelines for the sole reason that the “sentence imposed” did not exceed 13 months at the time he committed the base offense of illegal reentry. *1350 Mr. Rosales reserved the right to appeal application of the 16-level enhancement.
The district court rejected Mr. Rosales’s argument and applied the 16-level enhancement as recommended in the PSR, resulting in an advisory Guidelines range of 37 to 46 months. The district judge ultimately sentenced Mr. Rosales to a prison term of 37 months. If the district court had applied the 12-level enhancement under § 2L1.2(b)(l)(B) instead of the 16-level enhancement, as Mr. Rosales says it should have, the Guidelines range would have been 24 to 30 months. On appeal, Mr. Rosales challenges the procedural reasonableness of his sentence, claiming that the district court improperly applied the Sentencing Guidelines.
II
A
The district court properly exercised jurisdiction over this case involving a crime against the United States pursuant to 18 U.S.C. § 3231. We have jurisdiction over this appeal of the district court’s final sentencing decision pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).
We review de novo a district court’s interpretation of the Sentencing Guidelines where the appellant’s argument was properly preserved before the district court. United States v. Ford, 613 F.3d 1263,1268 (10th Cir.2010).
In United States v. Ruiz-Gea, we confronted the precise issue that Mr. Rosales raises in his appeal in analogous factual circumstances, but there only reviewed for plain error because the defendant’s objection to the 16-level enhancement was not preserved in the district court. United States v. Ruiz-Gea, 340 F.3d 1181, 1185 (10th Cir.2003). In Ruiz-Gea, we found no plain error in the district court’s application of the 16-level enhancement, but explicitly noted the difficulty of the issue and invited future litigants to address the question after proper preservation before the district court. Id. at 1188.
Mr. Rosales preserved this issue in the district court proceedings, so here we must apply de novo review to the district court’s application of the Guidelines. Because our opinion in Ruiz-Gea held that the defendant’s argument was at least “plausible” and only resolved the case on the ground that the district court did not plainly err, in this case we must set out anew in reviewing § 2L1.2’s application. See Ruiz-Gea, 340 F.3d at 1187.
B
The Guidelines provision at issue in this case, USSG § 2L1.2(b)(l), provides as follows:
“If the defendant previously was deported ... after (A) a conviction for a felony that is ... a drug trafficking offense for which the sentence imposed exceeded 13 months ..., increase [the base offense level] by 16 levels.... ”
Application Note l(B)(vii) to § 2L1.2 defines a “sentence imposed” as including “any term of imprisonment given upon revocation of probation.... ” Additionally, the commentary makes clear that the length of the defendant’s prior sentence is the maximum term of imprisonment for his prior offense. In other words, when the defendant’s earlier sentence is for a range of years, the term of imprisonment is the maximum end of that range, for purposes of § 2L1.2.[1] Thus, Mr. Rosales’s ultimate *1351 state court sentence of 1 to 15 years is a 15-year prison sentence for purposes of § 2L1.2.
Mr. Rosales challenges the use of his 15 year sentence because it was not imposed until after he committed the base offense in 8 U.S.C. § 1326. In other words, Mr. Rosales asks us only to count the drug trafficking sentence that was imposed before he illegally reentered the country.
First and foremost, we carefully focus on the consequences of the Sentencing Commission’s use of the word “after” in its provision. According to Mr. Rosales, this word choice means that all the elements of the § 2L1.2(b)(l) enhancements — conviction and imposition of sentence for a prior drug trafficking felony — must occur prior to the defendant’s earlier deportation in order for the enhancement to be implicated. Under Mr. Rosales’s view, the § 2L1.2(b)(l)(A) 16-level enhancement plainly does not apply to him since the 15 year sentence for his drug trafficking felony was not imposed before his illegal reentry.
The text of § 2L1.2(b)(l) makes repeated use of the past tense (“imposed”; “exceeded”) in referring to the predicate drug trafficking felony sentence serving as the basis for an enhancement, implying that the previous sentence must have been imposed before some date of reference.[2] Because it is undisputed that the defendant’s prior conviction must have occurred before deportation, we agree with Mr. Rosales that the most logical reading of § 2L1.2 is to refer to the date of deportation in evaluating whether the “sentence imposed” for the prior felony exceeded 13 months.
In other words, we conclude that the temporal requirement contained in the text of § 2L1.2 with regard to the defendant’s conviction also applies to the imposition of his sentence for that conviction. This view is consistent with the interpretation of § 2L1.2 adopted by the Seventh Circuit in United States v. Lopez, 634 F.3d 948 (7th Cir.2011). Our ultimate disposition is consistent with results reached in three of our sibling circuits, though we recognize that one circuit has held to the contrary. Compare United States v. Bustillos-Pena, 612 F.3d 863, 869 (5th Cir.2010) (relying on the rule of lenity and concluding that “it is error to implement the sixteen-level enhancement” in analogous factual circumstances), United States v. Lopez, 634 F.3d 948, 950 (7th Cir.2011) (“We hold that [the defendant’s] later sentence on probation revocation after his deportation and reentry should not count under section 2L1.2(b)(l)(A)(i).”), and United States v. Guzman-Bera, 216 F.3d 1019, 1021 (11th Cir.2000) (applying an earlier version of § 2L1.2(b)(l)(A) when determining whether the defendant had committed an aggravated felony and concluding that a post-deportation and -illegal reentry sentence lengthening “should not have been used for enhancement purposes under U.S.S.G. § 2L1.2(b)(l)(A)”), with United States v. Compres-Paulino, 393 F.3d 116, 118 (2d Cir.2004) (per curiam) *1352 (holding that the “defendant illegally reentered the United States after having been convicted of a drug trafficking offense for which the sentence imposed exceeded 13 months” in analogous factual circumstances) (internal quotations omitted). See also United States v. Jimenez, 258 F.3d 1120, 1126-27 (9th Cir.2001) (stating in dictum that the presence vel non of an aggravated felony for purposes of § 2L1.2 turns on whether the statutory elements of such a felony were met “prior to ... deportation and reentry”).
The government argues that the commentary to § 2L1.2 supports its interpretation of the provision. We disagree. We defer to the Sentencing Commission’s view as expressed in the commentary unless manifestly inconsistent with the Guidelines themselves. United States v. Rendon-Alamo, 621 F.3d 1307, 1309 (10th Cir.2010). Like the Seventh Circuit in Lopez, we conclude that the commentary does not support the government’s construction of § 2L1.2. See Lopez, 634 F.3d at 953.
We owe no particular deference to the commentary in this case because it does not, despite the government’s contrary protestations, alter the temporal constraint inherent in § 2L1.2.[3] Seeking to persuade us otherwise, the government directs us to Application Note l(B)(vii), which defines the term “sentence imposed” as including “any term of imprisonment given upon revocation of probation.” USSG § 2L1.2, Application Note l(B)(vii) (emphasis added). The government urges a simple truism: “any” means “any.” According to the government, if the Commission wished to limit the enhancement to only those defendants who had their sentence increased before they committed the base offense of illegal reentry, they would have picked one of the myriad of words more restrictive than “any” for use in the relevant application note. We are not persuaded.
Most importantly, the commentary simply does not address the temporal constraint at the crux of this appeal. Invocation of the “relation back” doctrine for increased sentences upon revocation of probation, as required by the commentary, is not inconsistent with our understanding of the temporal constraint embodied in the text of § 2L1.2. The only reference to any sort of temporal constraint in the relevant portion of § 2L1.2’s commentary is that the meaning of “sentence imposed” is “without regard to the date of the conviction.” We do not interpret this as an exception to the temporal limitation that we have concluded is embedded in § 2L1.2. Instead, the phrase “without regard to the date of conviction” simply instructs us to consider, in applying § 2L1.2, all of the defendant’s convictions prior to his illegal reentry, no matter how far in the past they occurred. See, e.g., United States v. Olmos-Esparza, 484 F.3d 1111, 1113-14 (9th Cir.2007); United States v. Camacho-Ibarquen, 410 F.3d 1307, 1313-15 (11th Cir.2005).
Moreover, in explaining the rationale for its definition of “sentence imposed,” the Sentencing Commission clarified that its definition “is consistent with the case law interpreting the term [‘sentence im *1353 posed’]....” USSG App. C, Vol. II, Amendment 658 (Nov. 1, 2003). The Commission cited four cases in support of the definition it proffered. Id. None of the four cases implicated or discussed the temporal constraint at issue in this appeal. See United States v. Moreno-Cisneros, 319 F.3d 456 (9th Cir.2003) (holding that the defendant’s “sentence imposed” exceeded 13 months where the defendant received an increased sentence upon revocation of probation imposed prior to the defendant’s deportation); United States v. CompianrTorres, 320 F.3d 514 (5th Cir.2003) (reaching the same conclusion as Moreno-Cisneros where the defendant’s sentence had been increased due to revocation of probation prior to deportation); United States v. Hidalgo-Macias, 300 F.3d 281 (2d Cir. 2002) (per curiam) (same); United States v. Rodriguez-Arreola, 313 F.3d 1064 (8th Cir.2002) (establishing that the length of the “sentence imposed” was the maximum term the defendant could have served where the only imposition of sentence occurred prior to the defendant’s deportation). Notably, the Commission made no reference to United States v. GuzmanBera, 216 F.3d 1019 (11th Cir.2000) (per curiam), a case which did explicitly address and recognize the temporal constraint in § 2L1.2 with regard to both conviction and sentencing, albeit in the aggravated felony context. The temporal constraint for imposition of sentences inherent in § 2L1.2 had been plainly recognized in Guzman-Bera — before the 2003 amendments were enacted. The Commission nevertheless ignored the matter and referenced only cases involving pre-deportation probation revocations in its 2003 amendment.
If the Commission had, in its commentary or § 2L1.2 itself, addressed or at least mentioned the temporal constraint that has arisen in Mr. Rosales’s case, we would, of course, give great deference to its interpretation of the Guidelines. See United States v. Morris, 562 F.3d 1131, 1136 (10th Cir.2009). Unfortunately for the government, the pertinent Application Note fails to make any reference to the temporal restraint embodied in § 2L1.2(b)(l) — that the prior conviction and imposition of sentence must occur before the defendant illegally reenters the country. We are not ignoring the commentary on the grounds that it is in conflict with the Guidelines themselves; instead, we find that the commentary offers no guidance at all as to the temporal constraint lying at the heart of this appeal. We therefore decline to conclude that the commentary compels the result advocated by the government.
Our conclusion that the commentary offers no guidance as to the temporal restraint in § 2L1.2 does not render the relevant portion of the commentary meaningless or superfluous. If, for example, a defendant is on probation for a pre-deportation drug trafficking felony and has his sentence increased upon revocation of probation before he is deported, the commentary clarifies that his post-revocation sentence, which would clearly satisfy the temporal restraint in § 2L1.2, should be included in calculating his enhancement level. The result in this hypothetical example is not at all obvious without the interpretive guidance offered in the commentary to § 2L1.2.
We also note that our interpretation of § 2L1.2 is consistent with its overall purpose as part of the Guidelines sentencing scheme. The parties agree that the purpose of § 2L1.2(b)(l) is to punish illegal reentry more severely where the defendant has committed one or more of certain enumerated prior crimes (in this case, a drug trafficking felony). The method for determining the seriousness of the prior drug trafficking felony is clearly and numerically prescribed — the length of the *1354 sentence for the earlier crime is determinative of the degree of enhancement— even though it ultimately provides only a rough measure of seriousness. The Commission’s approach is, in our view, straightforward: if the defendant received a long sentence for a drug trafficking crime before he was deported, he is probably a serious drug offender and we therefore must punish more severely his subsequent (■ie. post-increased sentencing) illegal reentry.[4] We agree with Mr. Rosales that the Commission did not intend consideration of a sentence imposed as a result of post-deportation actions (in this case, illegally reentering the country), even if technically imposed as part of the punishment process for an earlier felony.
Mr. Rosales’s act of illegally reentering the country reveals nothing about the seriousness of his drug trafficking conviction at the time he violated 8 U.S.C. § 1326. It would be inconsistent with the purpose of § 2L1.2 — whose text draws a distinction between pre- and post-illegal reentry actions — to consider revocation of his probation resulting from the base offense of illegal reentry in measuring the seriousness of his earlier drug trafficking felony.
We acknowledge that our decision is squarely in conflict with the Second Circuit’s holding in United States v. Compres-Paulino, 393 F.3d 116 (2d Cir.2004) (per curiam). We disagree with that ruling for the reasons elaborated above. One particular concern we have with that decision is the disparate treatment it gives to like offenders whose prosecutions have happened to differ sequentially. As Mr. Rosales points out, if we were to adopt the Second Circuit’s rule, Mr. Rosales would face more substantially increased punishment solely because of the happenstance that.his state probation was revoked before his federal prosecution commenced. This concern has also been shared by the Fifth and Seventh Circuits. See United States v. Bustillos-Pena, 612 F.3d 863, 867-68 (5th Cir.2010); United States v. Lopez, 634 F.3d 948, 951-52 (7th Cir.2011). The possibility of anomaly is not motivating us to “rewrite the Guidelines,” a practice against which we admonished in United States v. Dozier, 555 F.3d 1136, 1141 (10th Cir.2009). Instead, we simply bolster our conclusion, which is grounded in the Guidelines text, by acknowledging that it avoids needless and nonsensical aberrant results.
Although not dispositive to our resolution of the issue at hand, we find it noteworthy that the Sentencing Commission has failed to amend § 2L1.2 despite the holdings of the Fifth and Seventh Circuits, which have interpreted § 2L1.2 in the manner urged by Mr. Rosales. We do not go as far as characterizing the Commission’s silence on the matter as affirmative assent to the positions of these circuits, especially given that the circuit split on this issue has only become pronounced quite recently; the Fifth Circuit’s opinion in Bustillos-Pena, issued in July 2010, represented the first direct conflict with the Second Circuit’s 2004 opinion in Compres-Paulino. The Seventh Circuit opinion in Lopez was issued in March 2011, just one month prior to the Commission’s submission of the 2011 proposed amendments to Congress. We would err to unabashedly speculate that the Commission’s *1355 silence on this narrow issue of interpretation necessarily constitutes dispositive agreement with the Fifth and Seventh Circuits and disagreement with the Second Circuit. Nevertheless, the Commission’s failure to address this issue — the 2011 proposed amendments, submitted in April 2011, make no mention of it — offers at least a modicum of further support for the notion that the Fifth and Seventh Circuits’ construction of the provision is not inconsistent with the Commission’s intention. Cf. Braxton v. United States, 500 U.S. 344, 348, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991) (stating that Congress necessarily contemplated that the Sentencing Commission, in carrying out its duty under 28 U.S.C. § 994(o) to revise the Guidelines, would issue clarifying revisions in light of conflicting judicial decisions); U.S.S.G. App. C, Vol. Ill, Amendment 754 (Nov. 1, 2011) (offering no clarification of the “temporal constraint” issue litigated in this case as well as Lopez and Bustillos-Pena). We conclude that the best understanding of § 2L1.2 incorporates a temporal restraint with regard to the imposition of the defendant’s earlier sentence.
Ill
Having concluded that the district court misapplied the Sentencing Guidelines, we must determine whether to remand Mr. Rosales’s ease to the district court for resentencing. Although the Guidelines range before the district court is advisory in nature, it is the “foundation or starting point from which the sentencing process proceeds”; absent any showing of harmless error, we must reject a sentence “premised on an erroneous Guidelines calculation.” United States v. Rendon-Alamo, 621 F.3d 1307, 1308 (10th Cir.2010) (quotations omitted); see also United States v. Keck, 643 F.3d 789, 798 (10th Cir.2011). The government bears the burden of proving harmless error by a preponderance of the evidence. Harmless error is defined as an error that “did not affect the district court’s selection of the sentence imposed.” Keck, 643 F.3d at 798 (citing United States v. Labastida-Segura, 396 F.3d 1140, 1143 (10th Cir.2005)). Having failed to argue that any error by the district court was harmless, the government has not met its burden.
Mr. Rosales has conceded that he is subject to the 12-level enhancement in § 2L1.2(b)(l)(B). The district court should recalculate Mr. Rosales’s guidelines range with the smaller 12-level enhancement from § 2L1.2(b)(l)(B) replacing the 16-level enhancement from § 2L1.2(b)(l)(A) and proceed accordingly. We REMAND to the district court for resentencing in accordance with this opinion.
IT IS SO ORDERED.

. We note that the recent 2011 Amendments to the Guidelines altered the substance of § 2L1.2 by reducing the magnitude of the offense level increase if the defendant's predicate conviction does not count for criminal history points under Chapter Four. U.S.S.G. *1351 App. C, Vol. Ill, Amendment 754 (Nov. 1, 2011). Mr. Rosales has not argued that this change might benefit or apply to him.

. For its part, the dissent eloquently argues that the Commission’s verb tense selection is not particularly helpful. Specifically, the dissent suggests it is "equally plausible" to read the use of "imposed” and "exceeded” as referring a sentencing judge to any sentence imposed before the date of sentencing. Dissenting op. at 1356-57. While such a reading may indeed be plausible, for the reasons elaborated in this opinion, we cannot agree that it is “equally” as plausible as the understanding we set forth.

. The dissent contends that the "context” of § 2L1.2, i.e. the Guidelines commentary, makes "disarmingly simple” the meaning of the guideline provision. Dissenting op. at 1356. We cannot agree. Quite telling, in our view, is the Commission’s explanation of its written directions contained in the commentary (embodied in the amending documents that enacted Application Note l(B)(vii)), which makes no mention of the temporal constraint implicated in this case. See U.S.S.G. App. C, Vol. II, Amendment 658 (Nov. 1, 2003); infra at pp. 1352 - 53.

. To alleviate a concern of the dissent, we should clarify that we do not suggest that probation revocation sentences should be ignored altogether in determining the applicability of § 2L1.2, or any other sentencing enhancement for that matter. See dissenting op. at 1358. Indeed, we explicitly set forth an example of a case where a probation revocation sentence must quite rightly play a role in determining the applicability of the § 2L1.2 enhancement. See supra at p. 1353.