FILED
United States Court of Appeals
Tenth Circuit

October 19, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOSE DE JESUS RENDON-ALAMO,

     Defendant - Appellant.

No. 10-2089

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 2:09-CR-02225-JAP-1)**

Submitted on the briefs:[*]

Stephen E. Hosford, CJA Appointed Counsel, Arrey, NM, for Defendant-
Appellant.

Kenneth J. Gonzales, United States Attorney, and Terri J. Abernathy, Assistant
United States Attorney, Las Cruces, NM, for Plaintiff-Appellee.

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**GORSUCH**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has
determined unanimously to grant the parties' request for a decision on the briefs
without oral argument. *See* Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The
case is therefore ordered submitted without oral argument.

When calculating the applicable, albeit advisory, Guidelines sentence for

Jose de Jesus Rendon-Alamo, the district court assessed a 16-level enhancement

under U.S.S.G. § 2L1.2.  The court did so because Mr. Rendon-Alamo's criminal

record included a term of imprisonment exceeding 13 months for a prior drug

trafficking felony offense.  Mr. Rendon-Alamo complains that the district court

reached § 2L1.2's critical 13-month threshold only by adding his original 9-month

drug trafficking prison term to a 6-month prison term he received after violating

the conditions of his probation.  This aggregation business, Mr. Rendon-Alamo

says, § 2L1.2 won't allow.

As it happens, the Guidelines not only permit but compel the district

court's math.  For purposes of § 2L1.2's 13-month threshold, a commentary

issued by the Sentencing Commission tells us that initial sentences and probation-

revocation sentences should be combined.  Given that the Commission wrote the

Guidelines's equations, its commentaries on how to perform them are,

unsurprisingly, due much deference.  Mr. Rendon-Alamo offers no reason to deny

that deference here, we can imagine none, and so we affirm.

\* \* \*

A defendant can seek to attack the procedural reasonableness of his

sentence in a number of ways.  One way is to dispute the accuracy of the district

court's Guidelines calculations.   Because the advisory Guidelines sentencing

range constitutes the foundation or "starting point" from which the sentencing process proceeds and on which it rests, we will vacate a sentence premised on an erroneous Guidelines calculation as procedurally unreasonable "unless we are able to ascertain that the court's calculation error was harmless." *United States v. Todd*, 515 F.3d 1128, 1134-35 (10th Cir. 2008) (internal quotation marks omitted).

On first blush, any challenge to the district court's sentencing procedures in this case would seem unlikely to succeed. After Mr. Rendon-Alamo pled guilty to a charge of illegal re-entry into the United States after a previous deportation, all in violation of 8 U.S.C. § 1326(a) & (b)(2), the district court proceeded to calculate his advisory Guidelines sentence. The court ultimately concluded that the Guidelines suggested a sentence of somewhere between 46-57 months, but (of course) it did not stop there. Instead and proceeding under U.S.S.G. § 4A1.3, the court found that Mr. Rendon-Alamo's criminal history score didn't adequately reflect his past criminal conduct and reduced his sentence to 41 months — five months lower than the low end of the recommended Guidelines range. The court also went on to consider the various factors outlined in § 3553(a) and found them consistent with a 41-month sentence.

But while this might seem well and good, Mr. Rendon-Alamo argues a serious problem lurks in the district court's initial Guidelines calculation. As part of that calculation, the district court had to take account of Mr. Rendon-Alamo's

prior conviction for a drug trafficking offense. No one disputes that. But under U.S.S.G. § 2L1.2, Mr. Rendon-Alamo says, he should have received only a 12-level sentencing enhancement — rather than the 16-level enhancement the district court incorporated into its calculation. And with a 12-level enhancement, his recommended Guidelines range would've been significantly lower — 27 to 33 months. Had the district court known all this, Mr. Rendon-Alamo says, he might've received a shorter sentence than he did. And this means his sentence rests on a Guidelines calculation error, one we can't be sure was harmless, and thus it is his sentence should be vacated.

In coming to this conclusion, Mr. Rendon-Alamo's argument follows a particular path. It begins, as it must, with the language of § 2L1.2, which tells district courts that

> [i]f the defendant previously was deported, or unlawfully remained in the United States, after—(A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . . , increase [offense level] by 16 levels; (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels.

U.S.S.G. § 2L1.2(b)(1). Mr. Rendon-Alamo acknowledges that he was ultimately sentenced to 15 months in prison in connection with his prior drug trafficking offense. And he admits this is why the district court issued a 16-level enhancement. But, he says, the district court reached this conclusion only by improperly aggregating two separate "sentence[s] imposed" on him. Aplt. Br. at

- 4 -

7.  The district court should have focused solely on the fact that he was originally sentenced in 2007 to just 9 months' imprisonment and a period of probation. While Mr. Rendon-Alamo later violated his probation and was sentenced in 2009 to 6 additional months of imprisonment, this is a distinct and different sentence and the two stints in prison can't be added together.  It is for this reason, he says, he was entitled to only a 12-level enhancement.

We can't agree.  In 2003, the Sentencing Commission added a commentary to § 2L1.2 defining the term "sentence imposed" to "*include*[] *any* term of imprisonment given upon revocation of probation, parole, or supervised release." U.S.S.G. § 2L1.2, cmt. n.1(B)(vii) (emphasis added).  To "include" means "[t]o contain as a member of an *aggregate*" or "[t]o contain as a subordinate element, corollary, or secondary feature."  7 Oxford English Dictionary 800-01 (2d ed. 1989) (emphasis added).  To say then that the "sentence imposed" *includes* a post-revocation sentence means that Mr. Rendon-Alamo's 6-month revocation sentence is *part* of the total "sentence imposed," along with his original 9-month sentence.  To ascertain the total "sentence imposed" we must account not only for Mr. Rendon-Alamo's original 9-month sentence, we must also add, include, or aggregate *any* other, subordinate or secondary term of imprisonment given upon revocation.  Respecting the plain meaning of the Commission's commentary means the "sentence imposed" in this case had to be 15 months, the district court got it right, and Mr. Rendon-Alamo's appeal must fail.

Neither was the district court free to disregard the Commission's commentary when conducting its Guidelines calculations. The Commission writes the Guidelines's equations, and its commentaries on how to perform them are due deference from us much like the math teacher's directions to his pupil: "[W]e must defer to the Sentencing Commission's view unless we can say that the notes so far depart from the language of the Guideline that they are inconsistent with, or a plainly erroneous reading of [the] guideline." *United States v. Morris*, 562 F.3d 1131, 1136 (10th Cir. 2009) (internal quotation marks omitted).

In an apparent effort to suggest that the district court should have rejected the Commission's interpretation of § 2L1.2, Mr. Rendon-Alamo draws our attention to certain case law issued by this and other courts interpreting the term "sentence imposed" *before* the Commission offered its 2003 comment. But in doing so Mr. Rendon-Alamo quickly confronts two difficulties.

First, the Supreme Court has told us that "prior judicial constructions of a particular guideline cannot prevent the Commission from adopting a conflicting interpretation." *Stinson v. United States*, 508 U.S. 36, 46 (1993); *see also Braxton v. United States*, 500 U.S. 344, 348 (1991) ("Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest."). While the legal analysis

- 6 -

contained in earlier cases may bear on the question whether the Commission's

new interpretation is one to which we must defer, it can do no more than that.

Second, examining the analysis and holdings in the cases Mr. Rendon-

Alamo cites actually hurts, not helps, his cause. Instead of suggesting that the

Commission's 2003 interpretation might be inconsistent with or a plainly

erroneous reading of § 2L1.2, those cases (issued in 2003 before the Commission

provided its commentary in November 2003) reveal that this and other courts took

the view that the plain language of § 2L1.2 was best read in the very fashion the

Commission's commentary eventually endorsed. *See United States v. Ruiz-Gea*,

340 F.3d 1181, 1186-87 (10th Cir. 2003); *United States v. Compian-Torres*, 320

F.3d 514, 515 (5th Cir. 2003); *United States v. Moreno-Cisneros*, 319 F.3d 456,

458 (9th Cir. 2003). Later cases from our sister circuits, after 2003, have not

always acknowledged the Commission's intervening guidance but they have

continued to come to the same conclusion. *See*, *e.g.*, *United States v. Gomez-

Leon*, 545 F.3d 777, 784 (9th Cir. 2008); *United States v. Leiva-Deras*, 359 F.3d

183, 189-90 (2d Cir. 2004). In the end, then, all the cases Mr. Rendon-Alamo has

cited to this court tend to confirm rather than call into question the reasonableness

of the Commission's interpretation. *Cf. United States v. Dozier*, 555 F.3d 1136,

1139 (10th Cir. 2009) (holding that the term "prior sentence" includes sentences

issued on the revocation of probation for purposes of yet another Guidelines

provision, § 4A1.1).

Mr. Rendon-Alamo seeks to suggest otherwise by pointing out that the defendant's post-revocation prison term in *Ruiz-Gea itself* exceeded 13 months, while here the district court had to *combine* pre- and post-revocation sentences to achieve a "sentence imposed" of more than 13 months. Aplt. Br. at 6. As it happens, however, *Ruiz-Gea* did not place any stress on this fact. Instead, *Ruiz-Gea* expressly held that "including the sentence imposed upon revocation of probation as part of the 'sentence imposed' for the purposes of § 2L1.2(b)(1)(A)(i) is consistent with how such sentences have been treated under other provisions of § 2L1.2." 340 F.3d at 1186. This court, thus, came to exactly the same conclusion that the Commission later did in its permissible — and now controlling — commentary: prison terms before and after a probation revocation should be aggregated.

* * *

Because the district court's sentence was predicated on a correct calculation of the advisory Guidelines range, we cannot say it suffered from any potentially reversible procedural defect.[**]  The judgment of the district court is

*Affirmed.*

---

[**]  Beyond his challenge to the procedural aspects of the district court's sentencing decision, Mr. Rendon-Alamo alludes to the possibility that his sentence may be substantively unreasonable, suggesting that his 41-month sentence is simply too long.  But to win a substantive reasonableness appeal is no easy thing.  The Supreme Court has told us, repeatedly now, that a district court's sentencing decision should be upheld in the face of substantive challenges unless the defendant can show the sentence issued falls outside the realm of the rationally available sentencing choices available to the district court after conducting a procedurally proper inquiry.  *See United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (discussing the Supreme Court's guidance).  Flatly claiming that a sentence is too long does not meet this onerous standard.  Neither can we imagine how Mr. Rendon-Alamo might prevail on a substantive challenge — he was issued a sentence that took pains to take into account his personal circumstances and that was five months *lower* than the range suggested by the Guidelines.